**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **NATALIE P. COCHRAN,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:22-00598** |
| ) | **(Criminal No. 5:19-00247)** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Document No. 219.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 220.)

**FACTUAL AND PROCEDURAL BACKGROUND**

1.    **Criminal Action No. 5:19-00247:**

On September 25, 2019, Movant, was charged in a twenty-six (26) count Indictment. (Criminal Action No. 5:19-00247, Document No. 4.) Specifically, Movant was charged with twelve counts of Wire Fraud in in violation of 18 U.S.C. § 1343 (Counts 1 – 11, 17); one count of Bank Fraud in violation of 18 U.S.C. § 1344 (Count 12); four counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A (Counts 13 – 16); seven counts of Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957 (Counts 18 – 24); one count of Bankruptcy Fraud in violation of 18 U.S.C. § 157(2) (Count 25); and one count of False Oath in a Bankruptcy Proceeding in violation of 18 U.S.C. § 152(2) (Count 26). (Id.) On September 27, 2019, Assistant

Federal Public Defender ("AFPD") Rhett Johnson was appointed to represent Movant. (Id., Document No. 210.) On October 15, 2020, Movant pled guilty to one count of Wire Fraud in violation of 18 U.S.C. § 1343 (Count 6) and one count of Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957 (Count 18). (Id., Document Nos. 60, 63, 65.) A Presentence Investigation Report was prepared. (Id., Document No. 101.) The District Court determined that as to Count Six, Movant had a Base Offense Level of 7, and an Adjusted Offense Level of 33, the Court having applied the following: (1) An 18-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(J) because the intended loss exceeded $3,500,00; (2) A four-level enhancement pursuant to U.S.S.G. 2B1.1(b)(2)(B) because the offense resulted in a substantial financial hardship to five or more victims; (3) A two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(9)(B) because the offense involved a misrepresentation during the court of bankruptcy proceedings; and (4) A two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means and Movant intentionally engaged in conduct constituting sophisticated means. (Id.) The District Court determined that as to Count 18, Movant had a Base Offense Level of 33, and an Adjusted Offense Level of 34, the Court having applied a one-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(2)(A) because Movant was convicted under 18 U.S.C. § 1957. (Id.) Finally, the District Court determined that the Combined Adjusted Offense Level was 34, and the Total Offense Level was 31, the Court having applied a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). (Id.) The District Court sentenced Movant on March 18, 2021, to serve a total term of imprisonment of 135-months, to be followed by a three-year term of supervised release.[2] (Id., Document Nos. 96 and

---

[2] The District Court sentenced Movant within the advisory Guideline range. (Criminal Action No. 5:19-00247, Document Nos. 96 and 100.) Movant advisory Guideline range was 108 months to

100.) The District Court also imposed a $200 special assessment and restitution in the amount of $2,567,838.53. (Id.)

On April 12, 2021, Movant filed a Notice of Appeal. (Id., Document No. 106.) In her appeal, Movant, by counsel, David Schles, argued as follows: (1) "[T]he District Court erred at sentencing by applying the specific offense characteristic found at U.S.S.G. § 2B1.1(b)(9)(B) and increasing the offense level by two levels for a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding;" (2) "[T]he District Court erred at sentencing by finding that Movant's offense level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(J) should be determined by including the intended loss from her conduct, as suggested only in the commentary to § 2B1.1, because the commentary pertaining to this issue effectively amended the guideline to the detriment of [Movant] by defining 'loss' to include amounts in excess of the amount of loss the victims incurred as a result of her conduct;" and (3) "[T]he District Court committed procedural error in holding it was not permitted to grant a downward variance to account for the fact that the actual loss suffered by the victims was much less than the intended loss calculated in the PSR." United States v. Cochran, Docket No. 21-4170 (4th Cir. Oct. 8, 2021), Document No. 19. On August 3, 2021, the United States filed a Motion to Dismiss Appeal and to Suspend Briefing Schedule. Id., Document No. 23. Specifically, the United States argued that grounds asserted in Movant's appeal were precluded by the appellate waiver agreed to in Movant's plea agreement. Id. Movant filed her Response on August 12, 2021, and the United States filed its Reply on August 19, 2021. Id., Document Nos. 26 and 28. On October 8, 2021, the Fourth Circuit Court of Appeals granted the United States' Motion to Dismiss and dismissed Movant's appeal. Id., Document Nos.

---

135 months. (Id.)

3

29 and 30.

2.    **Section 2255 Motion:**

On December 22, 2022, Movant, acting *pro se*,[1] filed her instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal. (Civil No. 5:22-00598, Document No. 219.) As grounds for *habeas* relief, Movant alleges that her trial counsel was ineffective based on the following: (1) AFPD Johnson failed to call Attorney Robert Dunlap, Angie Martin, and Movant's minor daughter N.C. as witnesses at the sentencing hearing; (2) AFPD Johnson failed to object to alleged inaccuracies in the Presentence Report; (3) AFPD Johnson failed to object to Movant's "business attorney, Christopher Davis, giving a statement;" (4) AFPD Johnson "did not properly argue the intended loss enhancement" because "only actual loss should have been used." (Id., pp. 4, 13 – 14.) As Exhibits, Movant attaches the following: (1) A copy of an undated letter from N.C. (Id., p. 16); and (2) A copy of a letter dated December 15, 2022, from Angela Martin (Id., p. 17). By Order entered on January 3, 2023, the undersigned directed trial counsel, AFPD Johnson to file an affidavit responding to Movant's claims of ineffective assistance of counsel and the United States to file its Answer. (Id., Document No. 221.)

On January 19, 2023, Larry Jessup, Movant's father, filed a letter with the Court stating that he was providing "additional information that my daughter, Natalie Cochran, asked me to send you that may have a bearing on her 2255." (Id., Document No. 222.) As Exhibits, Mr. Jessup attached the following: (1) A copy of a letter dated April 2, 2021, from Mr. Jessup to Judge Volk complaining of alleged omissions and inconsistencies occurring during Movant's sentencing and

---

[1] Because Movant is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

attaching documents in support[2] (Id., pp. 3 – 70); (2) A copy of a letter addressed to Judge Volk from Charles Hawley dated November 16, 2020 (Id., pp. 71 – 72); and (3) A copy of an undated letter from Lacy Chapman Threadway (Id., p. 73).

On February 6, 2023, AFPD Johnson filed his Affidavit. (Id., Document No. 225.) As Exhibits, AFPD Johnson attached the following: (1) A copy of email communications between AFPD Johnson and Movant regarding Objections to the Presentence Report (Id., Document No. 225-2); (2) A copy of email communications between AFPD Johnson and Movant regarding the proposed allocution statement (Id., Document No. 225-3); and (3) A copy of Movant's Presentence Report Objection letter addressed the Senior United States Probation Officer Jeffrey D. Gwinn (Id., Document No. 228). On March 21, 2023, the United States filed its Response in Opposition to Movant's Section 2255 Motion. (Id., Document No. 238.) As Exhibits, the United States attached the following: (1) A copy of Movant's "Judgment in a Criminal Case" (Id., Document No. 238-1); (2) A copy of the Plea Agreement (Id., Document No. 238-2); and (3) A copy of the transcript for the Sentencing Hearing (Id., Document No. 238-3). On April 18, 2023, Movant filed

---

[2] As documentation in support of his April 2, 2021 letter, Mr. Jessup attached the following: (1) A copy of pertinent pages from the sentencing transcript (Civil Action No. 5:22-cv-00598, Document No. 222, pp. 8 – 11, 23, 25, 27 – 28, 50, 56 – 57, 60, 62 – 63, 69 - 70); (2) A copy of a Raleigh County Tax Receipt for Donna Kay Bolt and Edward Wayne Bolt (Id., pp. 12 – 16); (3) A copy of conversations via text messaging between Mike Cochran and Chris Davis (Id., pp. 17, 33 - 47); (4) A copy of Donna Bolt's Bank of America Visa transactions for December 6, 2017 through March 5, 2018 (Id., pp. 18 – 21); (5) A copy of a forfeiture document regarding reported losses for the Bolts (Id., p. 22); (6) A copy of a Memorandum of Interview regarding Aaron Toothman, Vice President and Loan Officer for Premier Bank, dated June 17, 2019 (Id., p. 26); (7) A copy of email communications between Attorney Robert Dunlap and Movant dated August 4, 2020, August 6, 2020, and August 11, 2020 (Id., pp. 29 – 30); (8) A copy of a Memorandum of Interview regarding Chris Davis dated August 28, 2019 (Id., p. 32); (9) A copy of a conversation via text messaging between Mike Cochran and Steve Maynard (Id., p. 48); (10) A copy of a billing statement addressed to Movant from Duke Health dated July 2, 2019 (Id., pp. 51 – 53); (11) A copy of an "Excuse Slip for Work or School" for Movant from Carol Larson Cancer Center dated October 22, 2019 (Id., p. 53); (12) A copy of a lab report from Beckley Oncology Associates dated October 22, 2019 (Id., pp. 54 – 55); (13) A copy of a call record (Id., p. 58); (14) A copy of a chat conversation between Cash McCall and Movant's son (Id., p. 61); (15) A copy of email communications between Movant and AFPD Johnson's Office dated September 29, 2019, November 4, 2020, November 5, 2020, November 9, 2020 (Id., pp. 65 - 68); (16) A copy of a letter addressed to Judge Volk from Charles Hawley dated November 16, 2020 (Id., pp. 71 – 72); (17) A copy of an undated letter from Lacy Chapman Threadway (Id., p. 73).

her Reply. (<u>Id.</u>, Document No. 240.)

## <u>DISCUSSION</u>

The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that her "sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish [her] grounds by a preponderance of the evidence." <u>Sutton v. United States</u>, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that her trial attorney failed to render effective assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. <u>Id.</u> The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at

687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that her attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that her attorney's performance prejudiced her such that it rendered the proceeding fundamentally unfair

7

or made the result unreliable. <u>Strickland</u>, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; <u>Fitzgerald</u>

<u>v. Thompson</u>, 943 F.2d. 463 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1112, 112 S.Ct. 1219, 117

L.Ed.2d 456 (1992).

**A.    AFPD Johnson's alleged ineffectiveness regarding his failure to call Movant's "supporters" to speak on Movant's behalf at sentencing.**

In her Motion, Movant alleges that AFPD Johnson acted ineffectively by failing to inform

Movant or her "supporters" that "they were able to speak on [Movant's] behalf" during the

sentencing hearing. (Civil Action No. 5:22-00598, Document No. 219, p. 4.) Movant first states

that her daughter, N.C., and employer, Angie Martin, "asked Mr. Johnson if they could speak [and]

[h]e would not permit them." (<u>Id.</u>, pp. 13 – 14.) Movant alleges that her "family and close friends

wanted to speak in support, but [AFPD Johnson] said it was not permitted." (<u>Id.</u>, p. 14.) Second,

Movant states that "[c]ounsel did not allow my bankruptcy attorney to give a statement" and "[t]his

would have potentially removed that enhancement." (<u>Id.</u>) Movant contends that she "was

instructed not to list any business holdings because everything had been seized and was no longer

rightfully [Movant's]." (<u>Id.</u>, p. 13.) Movant argues that "Mr. Dunlap would have verified this with

the Court, but Mr. Johnson failed to call him." (<u>Id.</u>)

As Exhibits, Movant attaches letters from N.C., Ms. Martin, Ms. Treadway, and Mr.

Jessup. (<u>Id.</u>, pp. 16 – 17 and Document No. 222, pp. 3 – 6, 73.) N.C.'s letter states, in pertinent

part, as follows: (1) AFPD Johnson said it "would look bad if my mother brought anyone – even

my grandparents" to the sentencing hearing; (2) N.C. and Ms. Martin "begged" AFPD Johnson

"to allow [N.C.] to speak against the defamation and lies that [N.C.] had to sit and listen to;" and

(3) AFPD Johnson "said that it would only make the Judge angry if [N.C.] spoke, it would make

[her] mother look even guiltier." (<u>Id.</u>, Document No. 219, p. 16.) In Ms. Martin's letter, she states,

in pertinent part, as follows: (1) AFPD Johnson "asked that [Movant] not have her parents or anyone there during her sentencing suggesting that it wouldn't be appropriate or in her best interest if they were there;" (2) "When asked who could speak on [Movant's] behalf before the Honorable Judge Volk made the final decision on her sentencing, [AFPD Johnson] asked that if anyone did speak, to keep it short and sweet;" and (3) "Lacy Treadway did exactly that . . . kept it very short. Unlike the others, that spoke against [Movant]." (Id., p. 17.) In Ms. Treadway's letter, she states that "[w]hile sitting in the hall of the courthouse, [she] was approached by the prosecuting attorney, Kathleen Robeson, who requested that [she] shorten [her] testimony due to the [hearing] being delayed and the previous 3 witnesses' testimonies being excessively long and drawn out." (Id., Document No. 222, p. 73.) In Mr. Jessup's letter, he states he was told by AFPD Johnson that he "would not be able to speak at the hearing and that it would be better for [Movant] if my wife and I did not attend." (Id., pp. 3 – 6.)

In his Affidavit, AFPD Johnson states "I do not recall whether [Movant] and I ever specifically discussed whether her supporters could physically speak on her behalf at sentencing, but it was never a source of contention aside from my stance against having her minor children speak at sentencing." (Id., Document No. 225, p. 1.) AFPD Johnson further explains that "[i]n this district it is customary to present letters of support in advance of sentencing in lieu of live testimony" and "I asked [Movant] to compile a list of people who may be willing to submit a letter of support on her behalf." (Id., p. 2.) AFPD Johnson states that Movant provided him with such a list, which he utilized to solicit and submit "several letters of support on her behalf for the Court to consider in advance of sentencing." (Id.) Specifically, AFPD Johnson states that he submitted to the Court "several letters of support from [Movant's] family members, friends, and other acquaintances." (Id., p. 6.) Concerning Angie Martin, AFPD Johnson states that he does not recall

9

Ms. Martin ever personally asking him if she could speak on Movant's behalf at sentencing." (Id., p. 4.) AFPD Johnson also states that he "never discussed any issue about who should or should not attend sentencing in Ms. Martin's presence" nor did he discuss Movant's personal allocation in Ms. Martin's presence. (Id., pp. 5 - 6.) As to N.C., AFPD Johnson explains as follows: "[Movant] wanted her minor daughter to testify at sentencing. [Movant] is correct that I expressly decided not to call her daughter to testify at sentencing over [Movant's] request as I did not believe it would be beneficial to do so." (Id.) AFPD Johnson, however, states that he never had a "conversation with [Movant's] minor daughter about whether or not she should testify on the day of sentencing or at any other time." (Id., p. 5.) Specifically, AFPD Johnson explains as follows:

> I had decided not to call her to testify at [Movant's] sentencing long before the day of and made my position clear to [Movant]. Moreover, I do not make it a practice to involve client's minor children in strategic legal decisions, and I did not deviate from this practice in [Movant's] case.
> ***
> I had previously encouraged [Movant] to spare her young children from the experience of watching their mother be subject to a potentially lengthy sentence. I provided this advice to her as a matter of decency, not strategy.

(Id., pp. 5 – 6.) Concerning Movant's parents, AFPD Johnson states as follows:

> I did not advise [Movant] or anyone else that her parents should not attend the sentencing proceedings. I did not express to her that "it would look bad." Attached is an email from [Movant] where she advised that her parents and minor son will not be attending the first sentencing proceeding. See Exhibit 3 (Cochran emails, Jan. 26, 2021, Jan. 28, 2021). I recall from speaking with [Movant], that her parents wanted to attend the sentencing hearing to support her, but ultimately chose not to since other family members, including their other children ([Movant's] siblings), planned to attend as victims.

(Id., p. 5.) AFPD Johnson states that he "never advised Larry Jessup that he would not be able to speak at [Movant's] sentencing hearing." (Id., p. 7.) Concerning Ms. Treadway, AFPD Johnson states that he "certainly did not provide any advice to Ms. Treadway, who was called by the Government to give a victim impact statement." (Id., p. 6.) Concerning Movant's bankruptcy

attorney (Mr. Dunlap), AFPD Johnson states that he contacted Mr. Dunlap discussing any potential statement. (<u>Id.</u>, pp. 2 – 3.) AFPD Johnson states that he ultimately concluded that Mr. Dunlap "had little to offer on the subject that was not already in the record." (<u>Id.</u>) AFPD Johnson noted that "[t]he main basis for [his] argument regarding the bankruptcy enhancement was that it fell outside the scope of relevant conduct." (<u>Id.</u>, p. 3.) As a secondary argument, AFPD Johnson states that it was his argument that Movant "seemed genuinely confused during the bankruptcy proceedings" and he "believed this was evidenced by the transcripts of the bankruptcy proceedings at issue." (<u>Id.</u>) AFPD Johnson asserts that he "did not feel that calling her bankruptcy attorney to testify about her intent was prudent or likely to effectively bolster our argument in any meaningful way." (<u>Id.</u>) As Exhibits, AFPD Johnson attached a copy of email communications from Movant acknowledging the following: (1) That Movant's parents were mailing a letter to AFPD Johnson and her therapist mailed a letter directly to the Court (<u>Id.</u>, Document No. 225-2); and (2) That her daughter was coming to Movant's sentencing, but her parents and son were not attending (<u>Id.</u>, Document No. 225-3).

In Response, the United States argues that the Federal Rules of Criminal Procedure only state that the defendant and victims have the right to address the Court at sentencing. (<u>Id.</u>, Document No. 238, p. 17.) The United States, therefore, states that counsel did not commit any error even if the Court were to accept these allegations as true. (<u>Id.</u>) Next, the United States notes that AFPD Johnson obtained letters in support of Movant and such were submitted to the District Court. (<u>Id.</u>) The United States argues that Movant "simply did not face any prejudice from this alleged error" because the District Court "was able to consider the same information by reading the letters of her 'supporters' as it would have learned through live testimony." (<u>Id.</u>) To the extent Movant attaches a letter from her minor daughter, N.C., claiming that AFPD Johnson tried to

11

dissuade Movant from bringing others including [Movant's] parents to the sentencing, the United States argues that such is not supported by the evidence. (Id.) The United States notes that Movant "did bring her daughter, N.C., and Angela Martin to the sentencing" and "[t]he idea that [Movant] believed she could bring these two individuals, but not her parents, confounds reason and common sense." (Id.) The United States notes that AFPD Johnson "stated at the sentencing hearing that [Movant's] parents choose not to attend because they did not know which side of the courtroom to sit on, meaning on defendant's side or on the government's side with their other two daughters who were also victims." (Id.) The United States further notes that Movant addressed the District Court at her sentencing and failed to "inform the Court that her defense attorney incorrectly stated that her parents did not wish to attend her sentencing." (Id., p. 18.) Finally, the United States contends that "[t]he language of the emails attached by defense counsel as Exhibit 3 also undermine this claim" because Movant "states that her parents and her younger son will not be attending her sentencing." (Id.)

In Reply, Movant asserts that she and AFPD Johnson did discuss "supporters speaking on [her] behalf." (Id., Document No. 240, p. 2.) Specifically, Movant states as follows:

> I asked how many people I could bring with me to court. Mr. Johnson instructed me that though my supporters could attend, only victims would be allowed to speak at sentencing. I then asked if that meant my parents could speak, as they lost money in the company. Mr. Johnson said "no." They had not been deemed victims by the prosecution. Mr. Johnson did say they could submit a letter of support.

(Id., pp. 2 – 3.) Next, Movant argues that she believes her "supporters would have been more impactful in person." (Id., p. 3.) Movant contends that "[i]t would also have provided them the opportunity to counter many of the blatant falsehoods the victims claimed." (Id.) Movant contends that "the incorrect statements by the victims drastically prejudiced the Judge." (Id., p. 9.) As to Mr. Dunlap, Movant argues that he "would have been able to provide Judge Volk with a firsthand

account of the bankruptcy chaos." (Id., p. 4.) Movant argues that when she was asked by the Court at sentencing if she was satisfied with AFPD Johnson's representation, "there was nothing I could do but agree." (Id., p. 8.)

Initially, the undersigned notes that several of Movant's claims are wholly unsupported by the record. To the extent Movant argues that her parents were advise by AFPD Johnson to not attend the sentence hearing, such a claim is contradicted by a sworn statement by AFPD Johnson and supporting email communications. (Case No. 5:22-cv-00598, Document Nos. 225 and 225-3.) Movant further provides a letter from Ms. Martin containing claims that are contradicted by the record. (Id., Document No. 219, p. 17.) Although Ms. Martin claims that AFPD Johnson refused to call her or any other "supporters" as character witnesses, she then complains that AFPD Johnson directed Movant's "supporters" to "keep it short and sweet." (Id.) As an example, Ms. Martin states that Ms. Treadway was specifically directed by AFPD Johnson to keep her testimony short. (Id.) Movant, however, attaches a copy of a letter from Ms. Treadway contradicting Ms. Martin's statement that AFPD Johnson requested Ms. Treadway to shorten her statement. (Id., Document No. 222, p. 73.) In Ms. Treadway's letter, she states that "[w]hile sitting in the hall of the courthouse, [she] was approached by the prosecuting attorney, Kathleen Robeson, who requested that [she] shorten [her] testimony due to the [hearing] being delayed and the previous 3 witnesses' testimonies being excessive long and drawn out." (Id.)

The undersigned cannot find that AFPD Johnson acted ineffectively in failing to call "supporters," character witnesses, or Mr. Dunlap at the sentencing hearing.[3] "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing

---

[3] To the extent Movant is arguing that her character witnesses had a right to be heard during the sentencing hearing, she is incorrect. Victims, however, have such a right.

13

of perceived benefits against perceived risks, and on to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317-18 (4th Cir. 2004)(counsel's decision not to call certain witnesses was reasonable based upon his professional judgment); also see Strickland, 466 U.S. at 690, 104 S.Ct. at 2065("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); United States v. Champman, 593 F.3d 365, 369 (4th Cir. 2010)(even if defendant disagrees, "which witnesses to call is a classic tactical decision left to counsel"); United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)(the failure to call witnesses, even those who might offer mitigating evidence, is not ordinarily viewed as a lapse in professional judgment); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)(the failure to call witnesses is a tactical decision that generally does not amount to ineffective assistance of counsel). It is well recognized that tactical decisions, such as which witness to call, are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009)(quotation marks omitted); United States v. Orr, 636 F.3d 944, 955 (8th Cir. 2011)("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengable decision of trial strategy."); Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010)("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Concerning Mr. Dunlap as a witness, AFPD Johnson explains that he made a strategic decision to not call Mr. Dunlap as a witness after investigating what Mr. Dunlap could offer in the way of testimony. AFPD Johnson states his primary strategy was the argument that Movant's bankruptcy proceedings fell outside the scope of

14

relevant conduct.[4] As a secondary argument, AFPD Johnson states that his argument was that Movant was genuinely confused during the bankruptcy proceedings and such was best supported by the bankruptcy proceeding transcripts. Thus, AFPD Johnson concluded it was not prudent to call Mr. Dunlap as a witness concerning Movant's intent. Concerning Movant's "supporters," AFPD Johnson submitted several character letters from various individuals in support of Movant to the District Court prior to the sentencing hearing. These letters clearly made the District Court aware that Movant had "supporters" that thought highly of her character. Additional statements by such "supporters" or character witnesses during the sentencing hearing would have been cumulative. See Noland v. French, 134 F.3d 208, 218 (4th Cir. 1998)(finding that trial counsel was not ineffective by failing to present testimony at sentencing that "would only reiterate what had already been presented"). Further, Movant fails to indicate how the in-person testimony of her "supporters" or character witnesses would have differed. Movant's mere claim that in-person testimony would have carried more weight is speculative at best. Movant provides no affidavits verifying the possible testimony from any "supporter" or Mr. Dunlap. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)(petitioner must proffer evidence of what the witnesses' testimony would have been and cannot establish ineffective assistance of counsel based on a general claim that additional witnesses should have been called); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)(a defendant who faults counsel for not calling a witness cannot simply state the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim); Slate v. Vargo, 2014 WL 3378627, * 7 (E.D.Va. July 8, 2014)("In federal jurisprudence it is well established that a claim of ineffective assistance

_____

[4] Any testimony by Mr. Dunlap would have been irrelevant as to this issue.

15

predicated on the failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); Johnson v. McCall, 2010 WL 936726, * 4 (D.S.C. March 15, 2010)("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.") Furthermore, Movant conclusory claim that she was prejudiced by AFPD Johnson's failure to call "supporters," character witnesses, or Mr. Dunlap is insufficient. The Fourth Circuit has recognized that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013)(citing United States v. Thomas, 221 F.3d 430, 437 (3rd Cir. 2000)); also see Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1997)(the "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"); United States v. McClellan, 2017 WL 2822315 (3rd Cir. Jan. 3, 2017)(finding petitioner's conclusory allegations of the ineffective assistance of counsel were insufficient); United States v. Faria, 268 Fed.Appx. 730 (10th Cir. 2008)(conclusory allegations of ineffective assistance of counsel were insufficient to warrant habeas relief); Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995)(finding habeas relief was unwarranted based on "conclusory allegations which are not supported by a statement of specific facts"); Andiarena v. United States, 967 F.2d 715, 719 (1st Cir. 1992)(finding summary dismissal appropriate where petitioner's claim was "wholly conclusory"). Based upon the foregoing, Movant cannot establish either prong of Strickland as to the foregoing claim. The undersigned, therefore, respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

**B.     AFPD Johnson's alleged ineffectiveness regarding statements made by the victims.**

In her Motion, Movant alleges that AFPD Johnson acted ineffectively by failing to "object to the inaccurate statements made by the victims." (Civil Action No. 5:22-00598, Document No.

219, p. 4.) Movant asserts that she "had given counsel proof of the mistruths after reading their letters to the judge." (Id.) Finally, Movant complains that AFPD Johnson did not object to her business attorney, Christopher Davis, giving a statement. (Id., p. 14.)

In his Affidavit, AFPD Johnson does not dispute that he failed to object or cross-examine the victims. (Id., Document No. 225.) AFPD Johnson explains that "[v]ictims are afforded the opportunity to be heard at sentencing" pursuant to Rule 60(a)(3) of the Federal Rules of Criminal Procedure. (Id.) AFPD Johnson states that "[d]efense counsel are not allowed to cross-examine victims during their victim impact statements." (Id.) As to Chris Davis's statement, AFPD Johnson states that he did not object because he "did not believe there was a viable basis in law for this position." (Id., p. 4.)

In Response, the United States first argues that Movant "vague and conclusory assertion" that the victims provide false information should be summarily dismissed. (Id., Document No. 238, pp. 18 – 19.) The United States further notes that "given that the primary evidence against [Movant] was mostly derived from documents, including financial records, text messages, and the transcript of her meeting with bankruptcy creditors, it is also unclear what supposed lies defense counsel should have corrected." (Id., p. 19.) Notwithstanding the foregoing, the United States further argues that AFPD Johnson's performance was not deficient. (Id.) The United States states that "[d]efense attorneys do not cross-examine victims during their victim impact statements, just as prosecutors do not cross-examine defendants during their statements at sentencing." (Id.) Next, the United States contends there is "no indication that any alleged 'corrections' would have had any impact on the case or sentence, as Judge Volk sentenced defendant within the agreed upon range in her plea agreement which corresponded with the Court's calculated guideline range." (Id.) Finally, the United States asserts that Movant gave a lengthy allocation wherein she "spent a great

17

deal of time correcting what she appeared to believe were misstatements from the victims." (Id.)
The United States argues that since Movant "took the opportunity to essentially point out what she
believed were untrue statements from the victims, she did not suffer any prejudice for any alleged
deficiency from Mr. Johnson's decision to refrain from cross-examining the victims during their
victim impact statement." (Id.)

In Reply, Movant appears to dispute that her allegations are vague. (Id., Document No.
240, p. 9.) Movant argues that there were "multiple incidents of deficiency of counsel and the
incorrect statements by the victims drastically prejudiced the Judge." (Id.)

The undersigned finds that Movant's claims that AFPD Johnson acted ineffectively by
failing object to the "inaccurate statements made by the victims" and the statement made by Chris
Davis are vague and conclusory. As explained above, the Fourth Circuit has recognized that
"vague and conclusory allegations contained in a § 2255 petition may be disposed of without
further investigation by the District Court." Dyess, 730 F.3d at 359; also see Blackledge, 431 U.S.
at 74, 97 S.Ct. at 1629. Notwithstanding the foregoing, the undersigned will briefly consider the
merits of Movant's claims. The record clearly reveals that Chris Davis gave a victim impact
statement as the attorney for Hauling Reorganization. (Criminal Action No. 5:19-00247,
Document No. 97, pp. 32 – 40.) The right of victims to be heard at sentencing is found in the Crime
Victims' Rights Act of 2004 ("CVRA") pursuant to 18 U.S.C. § 3771, and Federal Rules of
Criminal Procedure 32(i)(4)(B) and 60(a)(3). The CVRA sets forth rights to "protect victims and
guarantee them some involvement in the criminal justice process." United States v. Moussaoui,
483 F.3d 220, 234 (4th Cir. 2007). Specifically, a victim has "the right to be reasonably heard at
any public proceeding in the district court involving release, plea, sentencing, and any parole
proceeding," and "the right to full and timely restitution as provided in law. 18 U.S.C. § 3771(a)(4)

18

and (6). Thus, the undersigned cannot find that AFPD Johnson acted unreasonably in his failure to object to the victims presenting statements at Movant's sentencing hearing. Furthermore, Movant acknowledged under oath at sentencing that she was completely satisfied with AFPD Johnson's representation. (Criminal Action No. 5:19-00247, Document No. 97, p. 79.) Even assuming AFPD Johnson was objectively unreasonable in failing to object to victims' impact statements, Movant fails to establish how she was prejudiced. Movant contends that AFPD Johnson should have objected to the victims' statements because she had notified AFPD Johnson of these "mistruths after reading their letters to the judge." The record clearly reveals that during Movant's lengthy allocation, she notified the District Court of the alleged "mistruths" by the victims. (Criminal Action No. 5:19-00247, Document No. 97, pp. 105-11.) Similar to the victims, Movant was allowed to present her statement without any objections or cross-examination by opposing counsel. Furthermore, a review of the record also confirms that the primary evidence against Movant came from documentary evidence, such as financial records, transcripts regarding bankruptcy proceedings, and text messages. (Criminal Action No. 5:19-00247, Document Nos. 75, 97, 100, 101.) Based upon the foregoing, Movant cannot establish either prong of Strickland as to the foregoing claim. Accordingly, the undersigned respectfully recommends that Movant's claim of ineffective assistance of counsel on the above ground should be dismissed.

**C.    AFPD Johnson's alleged ineffectiveness regarding his failure to file objections to the Presentence Report.**

In her Motion, Movant alleges that AFPD Johnson acted ineffectively by failing to "object or file on the PSR" (Civil Action No. 5:22-00598, Document No. 219, p. 4.) Movant asserts that "[t]his includes incorrect loss amounts we discussed and had evidence were incorrect." (Id.) Movant further argues that AFPD Johnson was "not prepared to argue the intended loss

enhancement effectively." (Id.) Citing <u>United States v. Banks</u>, 2022 WL 17333797 (3rd Cir. 2022), Movant states that "[o]nly actual loss should have been used instead of intended loss." (<u>Id.</u>, p. 14.) Movant claims this "new precedent" was "accomplished through a proper argument by the defense." (<u>Id.</u>)

In his Affidavit, AFPD Johnson states that he did file objections to the Presentence Report. (<u>Id.</u>, Document No. 225, p. 2.) Specifically, AFPD Johnson asserts that he filed seventeen (17) objections. (<u>Id.</u>) AFPD Johnson also explains that "[i]n addition to discussing the contents of the PSR with [Movant], we exchanged emails where [he] solicited and incorporated her input into the objections." (<u>Id.</u>) Second, AFPD Johnson explains that he argued the intend loss enhancement issue by relying upon the "then-recent *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), and *United States v. Nasir*, 982 F.3d 144 (3rd Cir. 2020), line of cases that reigned in the degree of deference long afforded to the Sentencing Guidelines' Commentary." (<u>Id.</u>, p. 3.) AFPD Johnson states that "because this precise issue had never been addressed by the Fourth Circuit through a published opinion, [he] believed it was ripe for consideration in view of *Kiser*, *Havis*, and *Nasir*." (<u>Id.</u>) AFPD Johnson explains that he "briefed the issue by citing several opinions that [he] felt offered persuasive support for [his] argument (an argument [Movant] correctly notes that the Third Circuit recently embraced nearly two years later in *United States v. Banks*, 55 F.4th 246 (3rd Cir. 2022))." (<u>Id.</u>) AFPD Johnson, however, states that the "District Court ultimately relied on what [it] considered Fourth Circuit precedent on the issue." (<u>Id.</u>) As Exhibits, AFPD Johnson attaches the following: (1) A copy of his Presentence Report Objection Letter (<u>Id.</u>, Document No. 225-1); and (2) A copy of email communications between AFPD Johnson and Movant concerning objections to the Presentence Report (<u>Id.</u>, Document No.

20

225-2).

In Response, the United States argues that Movant's above claim is without merit. (Id., Document No. 238, pp. 10 – 11, 15 - 16.) The United States asserts that "defense counsel filed numerous written objections to the PSR and raised these objections again in his sentencing memorandum, which rebut that assertion." (Id., p. 15.) The United States notes that AFPD Johnson did file objections to the Presentence Report and discussed such objections with Movant. (Id., pp. 10 and 15.) As to Movant's claim that AFPD Johnson was "unprepared to argue the intended loss enhancement," the United States argues that such is unsupported by the record. (Id., pp. 15 – 16.) The United States argues that Movant "ignores the *Havis* style argument put forward by defense counsel in his sentencing memorandum." (Id.) The United States explains that AFPD Johnson argued that the District Court no longer needed to rely on the Sentencing Guidelines Commentary citing Kisor, Havis, and Nasir. (Id., p. 11.) Although the United States acknowledges that the Third Circuit later upheld such an argument in Banks, the United States notes that the District Court rejected such an argument in Movant's case. (Id., p. 15.) The United States contends that the mere fact that the District Court rejected defense counsel's argument does not mean AFPD Johnson was ineffective. (Id., pp. 15 – 16.) The United States further asserts that "the District Court was complimentary of defense counsel's 'novel' argument but overruled it as the Court believed that he was bond by Fourth Circuit precedent." (Id., p. 16.) The United States notes that the foregoing caselaw merely reveals a Circuit split on the issue. (Id.) Finally, the United States argues that Movant "fails to put forward any basis for why or how Mr. Johnson was unprepared at arguing the loss enhancement sufficient." (Id.) The United States "simply states in a conclusory fashion that Mr. Johnson was ineffective and that with a proper argument the Court would have accepted the

21

intended loss argument which would have resulted in a reduced sentence of incarceration for her." (Id.) The United States concludes that "this unsubstantiated claim should be dismissed." (Id.)

In Reply, Movant continues to argue that her "point level" was improperly determined by intended loss instead of actual loss. (Id., Document No. 240, pp. 3 – 4.) Movant argues that the loss to Jonathan Miller was "wrong in excess of $40,000." (Id.) Movant claims she "was able to prove this to Mr. Johnson and his investigator through bank statements and phone records." (Id.) Movant further concludes there were "several others." (Id.) Movant concludes she should only be responsible for the "actual loss" to the victims. (Id.) Movant again cites Banks arguing that this "new precedent" should be applied to her case. (Id., p. 5.)

First, the undersigned finds that Movant's claim that AFPD Johnson acted ineffective by failing to "object or file on the in PSR" is wholly without merit. A review of the record clearly reveals that AFPD Johnson filed numerous objections to the Presentence Report and discussed such objections with Movant. (Civil Action No. 5:22-00598, Document Nos. 225-1 and 225-2; Criminal Action No. 5:19-00247, Document No. 74 and Document No. 101, pp. 49 – 57.) In an email communication with AFPD Johnson, Movant acknowledged that she had reviewed his intended objections to the Presentence Report, she agreed to his judgment, and "it looks great." (Document No. 225-2, p. 1.) Furthermore, Movant acknowledged under oath during the sentencing hearing that she had reviewed and discussed the Presentence Report with AFPD Johnson and she was "satisfied with the amount of time that [she] had to discuss those documents with Mr. Johnson." (Criminal Action No. 5:19-00247, Document No. 97, pp. 4 - 5.) After AFPD Johnson acknowledged to the District Court that all objections to the Presentence Report had been presented on behalf of Movant, Movant affirmed under oath that she was "completely satisfied with Mr.

Johnson's legal representation to this point in the case." (Id., p. 79.) Thus, Movant's above claim should be dismissed.

Next, the undersigned considers Movant's claim that AFPD Johnson was "not prepared to argue intended loss enhancement effectively." In support of the foregoing, Movant places substantial weight upon United States v. Banks, 54 F.4th 246 (3rd Cir. 2022). As a matter of first impression, the Third Circuit determined in Banks that the word "loss" is the loss the victim *actually* suffered instead of the *intended* loss for purposes of U.S.S.G. § 2B1.1. Id. The Third Circuit noted that the "Guideline does not mention 'actual' versus 'intended' loss; that distinction appears only in the commentary." Id. Thus, the Third Circuit determined that "[b]ecause the commentary expands the definition of 'loss' . . . we accord the commentary no weight." Id. First, the undersigned notes that Banks is non-binding authority that was decided *after* Movant's sentencing. Second, AFPD Johnson made the exact same arguments as presented in Banks to the District Court at Movant's sentencing. (Criminal Action No. 5:19-00247, Document No. 74, pp. 4 – 7 and Document No. 97, pp. 72 – 75.) Specifically, AFPD Johnson relied upon Kisor, Havis, Nasir, and Winstead to support his argument for actual loss instead of intended loss. (Id., Document No. 74, pp. 4 – 7.) AFPD Johnson also cited three cases from the Southern District of West Virginia wherein AFPD Johnson argued that the District Judges determined that deference did not have to be afforded to the Guidelines' Commentary. (Id., pp. 5 – 6.) The Judge Volk ultimately rejected AFPD Johnson's "novel" argument stating he was "bound by the long-standing line of precedent in our circuit, albeit unpublished, that speaks to the importance of and appropriateness of considering and even applying the intended loss figure." (Id., Document No. 97, p. 77.) Although AFPD Johnson was unsuccessful in his argument for actual loss instead of

intended loss, such does not establish that AFPD Johnson was deficient. As the record reflects, AFPD Johnson presented to the District Court the same argument that was presented to the Third Circuit in <u>Banks</u>. This Court, however, sits in the Fourth Circuit and Judge Volk rejected the argument holding he was "bound by the long-standing line of precedent in our circuit." Movant's mere claim that she was prejudiced because she would have received a lower sentence had AFPD Johnson been prepared to sufficiently argue the loss enhancement, is conclusory. Furthermore, the record is void of any indication that AFPD Johnson was unprepared to argue the actual loss verse intended loss issue. Based upon the foregoing, the undersigned finds that Movant cannot demonstrate that AFPD Johnson's conduct fell below an objective standard of reasonableness or that Movant's was prejudiced by counsel's failure concerning the above claims.

**D.    Request for Evidentiary Hearing:**

In her Section 2255 Motion and Reply, Movant contends that she is entitled to an evidentiary hearing. (Civil Action No. 5:22-00598, Document Nos. 219 and 240.) A Section 2255 Motion may be resolved without an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); <u>See</u> <u>United States v. Mitchell</u>, 484 Fed.Appx. 744, 745 (4th Cir. 2012). In the above action, the undersigned finds that an evidentiary hearing is not necessary because the submissions of the parties and the record clearly demonstrates that Movant is not entitled to relief on any of her claims. There "is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances." <u>Strong v. Johnson</u>, 495 F.3d 134, 139 (4th Cir. 2007)("Choosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit

sets out a detailed account of events."); also see United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004)(a court may discount "unsupported, conclusory statements" in an affidavit). The Fourth Circuit has explained that although a district court has before it conflicting affidavits, no evidentiary hearing is required where such would add nothing to the proceedings. United States v. Barsanti, 943 F.2d 428, 440 (4th Cir. 1991); also see United States v. Santana, 263 Fed.Appx. 334, 335 (4th Cir. 2008)("[I]t is not per se error for a district court to make credibility determinations on the basis of conflicting affidavits . . ."). "Holding an evidentiary hearing in those cases merely for the sake of holding an evidentiary hearing would squander scarce judicial resources that may be better utilized elsewhere." Dryer v. United States, 2016 WL 1019438, * 6 (S.D.W.Va. Feb. 19, 2016). Based on the foregoing, the undersigned finds that Movant's request for an evidentiary hearing should be denied.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document No. 219) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing

of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: March 28, 2024.



Omar J. Aboulhosn
United States Magistrate Judge